**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICHARD MATHIS, *et al.*,

        Plaintiffs,

    v.

COUNTY OF LYON, *et al.*,

        Defendants.

Case No. 2:07-cv-00628-APG-GWF

**ORDER ON THE PARTIES' POST-TRIAL MOTIONS**

ECF Nos. 365, 367, 369, 370, 377

From November 2, 2015 through November 10, 2015, a trial was held in this matter. The jury found for the plaintiffs and against the defendants. The parties have filed numerous post-trial motions. The plaintiffs seek attorney fees and costs and to alter or amend the judgment to include pre- and post-judgment interest. ECF Nos. 365, 367. Defendants Richard Glover and Lyon County have filed separate motions for a new trial, to alter or amend the judgment, and for remittitur. ECF Nos. 369, 370, 377.

**I.   BACKGROUND**

The factual background of this case has been written into the record on multiple occasions. *See, e.g.*, ECF Nos. 61, 186, 205. Thus, only a brief recitation of background facts will be given here.

On May 29, 2006, Lyon County Deputy Sheriff Abel Ortiz discovered Joseph R. Mathis dead in his home in Wellington, Nevada. Ortiz pronounced Joseph dead on the scene and called a funeral home to remove the body. After the body was removed, Ortiz locked and sealed the home.

Joseph had three sons: Richard Mathis, James Mathis, and Anthony Mathis (collectively, the "Mathis Brothers"). Richard is the trustee of the Joe Robinson Mathis and Eleanor Margherite Mathis Trust and the special administrator of Joseph's estate.

Later in the day on May 29, Ortiz unsuccessfully attempted to contact Richard, who lived in Las Vegas, to inform him of his father's death. While Ortiz was unable to reach Richard, he

was able to contact James in Washington state and Anthony in Quebec, Canada to inform them of their father's death.  The next day, Ortiz contacted Richard Glover, the elected Public Administrator of Lyon County, and informed him of Joseph's death.  Without notifying the Mathis Brothers, Glover entered Joseph's home and removed various weapons, personal property, and valuables.

On May 14, 2007, the Mathis Brothers, on behalf of themselves and the Mathis Trust, filed their complaint in this case.  The complaint asserts federal claims against Glover and Lyon County under 42 U.S.C. § 1983 for violations of the Fourth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  The complaint also asserts state law claims against Glover for conversion, trespass to chattels, trespass to land, negligence, constructive fraud, and breach of fiduciary duty.  On September 9, 2008, Judge Dawson dismissed the Equal Protection claims against the defendants. ECF No. 61.  Judge Dawson also held that Glover was entitled to qualified immunity for the Fourth Amendment claim, but not for the Fourteenth Amendment due process claim. *Id.*  Thus, the remaining claims for trial were Fourth and Fourteenth Amendment claims against Lyon County, and Fourteenth Amendment and state law claims against Glover.

On November 10, 2015, a jury returned a verdict for the plaintiffs on all claims against both Glover and Lyon County.  In total, the jury awarded property damages in the amount of $217,140, emotional distress damages for the constitutional violations in the amount of $1.8 million, and punitive damages against Glover in the amount of $100,000. ECF No. 342.

## II.    LEGAL STANDARD

### a.  Motion for New Trial

Federal Rule of Civil Procedure 59(a)(1) provides that I "may, on motion, grant a new trial on all or some of the issues-and to any party-as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Rule 59 does not specify the grounds on which a motion for a new trial may be granted. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003).  Rather, I am "bound by those grounds

that have been historically recognized." *Id.* Such grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). The Ninth Circuit has held that a "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

"The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). A new trial should not be granted, unless after giving full respect to the jury's findings, the trial court is "left with the definite and firm conviction that a mistake has been committed." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). A trial court abuses its discretion by ordering a new trial if the jury's verdict is not clearly against the weight of the evidence. *Kode v. Carlson*, 596 F.3d 608, 613 (9th Cir. 2010). However, "[b]ecause determining the clear weight of the evidence is a fact-specific endeavor, appeals courts are reluctant to second-guess district courts' conclusions. An appellate court generally will not reverse the denial of a new trial motion if there was some reasonable basis for the jury's verdict." *Molski*, 481 F.3d at 729.

To obtain a new trial based on erroneous evidentiary rulings, the moving party must show that the rulings were both erroneous and substantially prejudicial. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) ("A new trial is only warranted when an erroneous evidentiary ruling substantially prejudiced a party." (quotation and citation omitted)). To obtain a new trial based on the damages award, the moving party must show the award was excessive, speculative, or against the clear weight of the evidence. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086-87 (9th Cir. 2009).

### b.  Motion to Alter or Amend Judgment, and for Remittitur

I also have considerable discretion when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington N. Santa Fe Ry. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). However, "a Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).  I may grant relief under Rule 59(e) on four grounds: "1) the motion is 'necessary to correct manifest errors of law or fact upon which the judgment is based;' 2) the moving party presents 'newly discovered or previously unavailable evidence;' 3) the motion is necessary to 'prevent manifest injustice;' or 4) there is an 'intervening change in controlling law.'" *Turner*, 338 F.3d at 1063 (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999)); *see also Del Monte Dunes at Monterey, Ltd. v. Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

Regarding claims of excessive damage awards, as a general rule a jury's award of damages should be upheld.  Three exceptions exist: (1) where the amount is grossly excessive or monstrous; (2) where the evidence clearly does not support the damage award; or (3) where the award could have been based only on speculation or guesswork. *See Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1216 (9th Cir. 1983).  To remedy an excessive jury verdict, I may order remittitur or a new trial, at the option of the party awarded damages. *Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. 1993) (the option of a new trial is required by the Seventh Amendment's guaranty of trial by jury).  The prevailing party has the option of either submitting to a new trial or accepting a reduced amount of damages that the trial judge considers justified based on the evidence. *See Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983); *Minthorne v. Seeburg Corp.*, 397 F.2d 237, 244-45 (9th Cir. 1968); *Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 65-66 (1966).  "The proper amount of a remittitur is the maximum amount sustainable by the evidence." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1093 (N.D. Cal. 2009), *aff'd*, 616 F.3d 1357 (Fed. Cir. 2010) (quotation and citation omitted).

III.   **ANALYSIS**

In several of the motions, Glover and Lyon County argue that the jury's award of emotional distress damages for the constitutional violations was excessive and not supported by the evidence presented at trial. Rather than repeat the arguments and analysis multiple times, I will address this issue separately, after addressing the defendants' other arguments for why a new trial or altering the judgment is required.

**a.   Richard Glover's Motion for a New Trial**

Glover argues that a new trial is warranted because (1) actions by the plaintiffs and their counsel resulted in passion or prejudice in the jury's damage awards, (2) several evidentiary rulings substantially prejudiced Glover, and (3) the jury was not given an instruction on qualified immunity.[1]

*1.  The Damage Awards were not the Result of Passion or Prejudice.*

Glover argues that several actions by the plaintiffs' counsel and rulings by the Court substantially prejudiced him and resulted in an improper jury award. First, he argues that both the courtroom demeanor of the plaintiffs, and their counsel's emphasis on it, led to improper passion or prejudice from the jury when awarding damages. Glover contends that the plaintiffs' counsel improperly "emphasized emotion over substantive testimony" when discussing the appropriate emotional distress damages to award. ECF No. 369 at 15. Second, Glover argues that the plaintiffs' counsel's reference to excluded evidence during closing argument (*i.e.*, Richard's inability to work) substantially prejudiced the jury against Glover.

Glover cites the size of the emotional distress damage awards as proof that the jury was influenced by passion or prejudice. He cites to an Eighth Circuit case holding that, where a damages award is found by the trial court to be a product of passion or prejudice, ordering a partial new trial only on damages and not liability is "generally inappropriate." *Dossett v. First*

---

[1] Glover also argues that the jury's emotional distress damage awards are contrary to the clear weight of the evidence. I address this separately below.

*State Bank*, 399 F.3d 940, 947-48 (8th Cir. 2005) ("if passion or prejudice influenced the jury's damages decision, then that same passion or prejudice may well have affected its decision on the issue of liability as well").  In that case, the trial judge ordered a new trial on liability and damages after finding the jury award was excessive.  The Eighth Circuit held that the district court did not abuse its discretion, noting that "review of the district court's decision to grant a new trial based on the size of the verdict is extraordinarily deferential, in view of the opportunity of the district court to hear the testimony, observe the demeanor of the witnesses, and know the community and its standards." *Id.* at 946 (quotation and citation omitted).

Having reviewed all evidence and argument presented at trial and in the parties' motions, there is no indication that the jury's damage awards were based on passion or prejudice.  While not small, and while more than the plaintiffs suggested in their closing, the jury's emotional distress damage awards are not outrageous or so out of sync with the facts of this case that the only reasonable explanation could be improper passion or prejudice.  I thus am not "left with the definite and firm conviction that a mistake has been committed." *Landes Const. Co.*, 833 F.2d at 1371-72.  I therefore deny Glover's motion on this point.

### 2. The Evidentiary Rulings Did Not Substantially Prejudice Glover.

Glover argues that he was substantially prejudiced by evidentiary rulings made during trial.  He first cites my ruling admitting testimony about a 2011 criminal complaint and misdemeanor conviction to show absence of mistake.  Glover contends that this evidence was offered by the plaintiffs to show his conformity with past practices and therefore was inadmissible character evidence under Federal Rule of Evidence 404(b).

Glover raised this issue before trial and sought to have this evidence excluded.  At that time, the plaintiffs argued that the evidence was being offered to show absence of mistake under Rule 404(b)(2). ECF No. 360 at 194-95.  I ruled that, assuming the plaintiffs laid the proper foundation, the evidence was admissible to show absence of mistake or accident on Glover's part. *Id.* at 200.  During closing argument, plaintiffs' counsel tied in the testimony related to the 2011 conviction to the plaintiffs' argument that Glover's mishandling of the Mathis estate's property

was not a mistake, but knowing and intentional. ECF No. 385-5 at 20-23.  Admission of this evidence was not erroneous or substantially prejudicial.  I deny Glover's motion on this ground.

Glover next claims he was substantially prejudiced by the admission of evidence related to other investigations and the handling of other estates by Lyon County Public Administrators (including Glover) for the limited purpose of showing the County's policies and customs.  Prior to this evidence being offered to the jury, a limiting instruction was given:

> When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it for that limited purpose and no other.  The testimony and evidence you are about to hear related to the acts and conduct of Lyon County Public Administrators, including Richard Glover, [are to] be considered only for the limited purpose of establishing plaintiffs' allegations against Lyon County with respect to its policies and practices and for no other reasons.

ECF No. 361 at 215.  Glover argues that despite this limiting instruction, he was substantially prejudiced because plaintiffs' counsel's questioning "focused heavily" on Glover and therefore the "jury likely considered the information to evaluate Glover's character" and it "more probably than not tainted the verdict." ECF No. 369 at 17.

A jury is presumed to have followed the judge's limiting instruction and considered the evidence only for the limited purpose for which it was offered. *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (citing *United States v. Baker*, 10 F.3d 1374, 1388 (9th Cir. 1993), *cert. denied*, 513 U.S. 934 (1994)).  Having reviewed the testimony and evidence in question, and taking into account the limiting instruction that was given to the jury immediately preceding the relevant testimony, the decision to admit the evidence for the limited purpose of showing the County's policies or customs was not erroneous and Glover was not substantially prejudiced.  I deny Glover's motion for a new trial based on these evidentiary rulings.

### 3. The Jury Was Properly Instructed on Qualified Immunity.

Glover argues that the jury was not properly instructed on the issue of qualified immunity. He contends that, "notwithstanding the substantive reasons why Glover was entitled to qualified immunity, the Court erred by refusing to allow the jury to consider whether Glover acted as a

1   reasonable officer would act, with respect to providing pre-deprivation notice." ECF No. 369 at

2   20.  Glover further contends that, "[t]he Court had an opportunity to allow the issue of

3   'reasonableness' to go to the jury.  However, after brief consideration, the Court declined to do

4   so." *Id.*

5        Prior to trial, the issue of qualified immunity was reviewed on numerous occasions by me,

6   Judge Dawson, and the Ninth Circuit.[2]  Contrary to Glover's contention that only "brief

7   consideration" was given to this issue, defense counsel was given ample time to once again argue

8   qualified immunity, which he did in his motion for judgment after the close of evidence.[3] ECF

9   No. 363 at 127-138, 203-209.  At that time, after consideration of all evidence submitted at trial,

10  my ruling was that "no reasonable jury could find that a reasonable public official would have

11  believed that no notice was required." *Id.* at 209.  Upon review of the evidence, I affirm my prior

12  rulings.  Glover's motion for a new trial based on qualified immunity is denied.

13        **b.  Glover's Motion to Alter or Amend the Judgment, and for Remittitur**

14        Glover also moves to alter or amend the judgment because: (1) the damage awards are

15  inconsistent with state law, and (2) the property damage awards are duplicative.[4]

16            *1.   The Damage Awards are not Inconsistent with N.R.S. § 41.035.*

17        Glover argues that the claims against him were based on "actions in tort related to an act

18  or omission within the scope of Glover's public duties or employment as the public

19  administrator" and therefore, pursuant to Nevada Revised Statutes ("N.R.S.") § 41.035, damages

20  could not exceed $50,000 per claimant. ECF No. 370 at 10.  Glover thus argues that the jury's

21

22

23  _____

24  [2] The Supreme Court of the United States denied Glover's petition for a writ of certiorari from the Ninth Circuit's decision on this issue. ECF No. 389.

25  [3] Glover's transcript citation supporting this point is incorrect as it cites to a portion of the transcript unrelated to qualified immunity.

26

27  [4] Glover again argues in this motion that the emotional distress damage awards are excessive and not supported by the evidence.  This argument is dealt with below.

28                              Page 8 of 35

damages award of $107,047 to the Mathis Trust on each of the six state law claims[5] was error and must be capped at $50,000.

The plaintiffs respond that N.R.S. § 41.035's statutory damages cap is "per person per claim" and thus allows a claimant to recover up to $50,000 on each claim. They contend that the jury awarded the Mathis Trust a total of $107,047 on all six of the state law tort claims combined and therefore the award did not exceed § 41.035's statutory cap.

At the time of the action, N.R.S. § 41.035 stated:

> An award for damages in an action sounding in tort . . . against a present or former officer or employee of the State or any political subdivision, . . . arising out of an act or omission within the scope of the person's public duties or employment may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant.

The Supreme Court of Nevada has consistently held that § 41.035 allows recovery of damages "on a per person per claim basis." *Cty. of Clark, ex rel. Univ. Med. Ctr. v. Upchurch*, 961 P.2d 754, 761 (Nev. 1998). Here, the jury awarded the Mathis Trust a total of $107,047 on all six tort claims combined. Thus, the award did not exceed N.R.S. § 41.035's statutory cap of $50,000 per person, per claim. I deny Glover's motion on this ground.

### 2. The Property Damage Awards are not Duplicative.

Glover next argues that the property damages awarded by the jury are duplicative. He contends that the verdict form allowed the jury to determine a total amount of damages and then divide it equally between Glover and Lyon County. He contends that in taking this approach, the jury listed an identical amount of damages for multiple claims, and therefore must not have evaluated a separate amount of damages on each individual claim.

The plaintiffs respond that Glover failed to object to inconsistencies in the verdict before the jury was discharged and therefore he waived his right to a new trial or amendment of the

---

[5] The state law tort claims were conversion, trespass to chattels, trespass to land, negligence, breach of fiduciary duty, and constructive fraud.

1   verdict.  They also argue that the alleged inconsistencies in the judgment can be reconciled.  They

2   contend that a reasonable reading of the verdict is that the jury intended to award total property

3   damages in the amount of $217,140, and the separate damage awards for each claim indicate that

4   they found Glover and Lyon County to be equally responsible for the entire damages award.

5   Thus, they contend that the property damage awards are not duplicative.

6        When a party is "complaining about the wording of the questions submitted to the jury," it

7   must object at trial or the objection is waived. *Saman v. Robbins*, 173 F.3d 1150, 1155 (9th Cir.

8   1999).  However, "a party may appeal a jury's special verdict on the ground that the special

9   verdict answers are inconsistent even if that party does not raise the issue to the district court."

10  *Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010) (citation omitted).  I have a duty to

11  reconcile the jury's special verdict responses on any reasonable theory consistent with the

12  evidence. *Pierce v. S. Pacific Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987) (citations

13  omitted).

14       There is a reasonable theory for the jury's responses that is consistent with the evidence.

15  During deliberations, the jury sent out a note asking if property damages were "to be assigned for

16  each claim separately or be assigned a lump sum." ECF No. 350 at 3.  After discussion, input, and

17  approval from the parties, I responded:

18       [Y]ou are to consider each claim separately and, if you find damages are
         appropriate, enter damages for that claim.  You may allocate up to the full
19       amount of each plaintiff's damages to each claim and each defendant.
         However, Plaintiffs are entitled to recover their total property damages only
20       once.  Therefore, once you have completed the jury verdict form, please go
         back and review all damage amounts you have entered, and then indicate the
21       total amount of damages to be awarded to each Plaintiff, if any, on all claims
         combined.  For example, if you award a plaintiff $10 for each of four claims,
22       indicate whether you intend to award that plaintiff $10 or $40.  I am sending
         in to you an amended Verdict form that adds Question 21 to address this
23       point.  Answer Question 21 only after you have addressed all of the prior
         questions on the Verdict form.
24

25  *Id.* at 4.  Question 21 was added to the verdict form asking the jury to indicate the total amount of

26  property damages awarded to each plaintiff on all claims combined. ECF No. 342 at 9.  The jury

27  answered this question by stating a total property damages award of $217,140 on all claims. *Id.*

28                              Page 10 of 35

The parties agree that this amount is reasonably consistent with Trial Exhibit 526, "Schedule of Joe Mathis' Missing Property," which lists the mean estimated value for the missing property as $214,440. ECF No. 370 at 43.  The jury also listed the property damages awarded for each plaintiff's claim against Glover and Lyon County. ECF No. 342 at 2-8.  Those awards totaled $108,570 for the claims against Glover and the same amount for the claims against Lyon County.  Combining those two totals equals the total property damages award of $217,140 on all claims that is listed in Question 21. *Id.* at 9.

Glover contends that the only reasonable explanation for this is that the jury must not have evaluated each individual claim separately.  I disagree.  My response to the jury's question, to which both parties agreed, specifically addressed this concern and stated that the jury was to consider and award damages separately on each claim.  "A jury is presumed to follow its instructions. . . . Similarly, a jury is presumed to understand a judge's answer to its question." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Armstrong v. Toler*, 11 Wheat. 258, 279 (1826) (opinion of Marshall, C. J.)).  A reasonable reading of the verdict form is that the jury awarded $217,140 in property damages consistent with the property schedule, and found each defendant responsible for half.  Because the jury's property damage awards are not inconsistent or duplicative, I deny Glover's motion to alter or amend the judgment on this ground.

### c.  Lyon County's Motion for New Trial or, in the Alternative, to Alter or Amend the Judgment and for Remittitur

Lyon County moves for a new trial or to alter or amend the judgment on numerous grounds.  The County argues that irrelevant and prejudicial evidence was erroneously admitted and the Court committed numerous legal errors that prejudiced the County and tainted the verdict.  In the alternative, the County argues that the judgment must be altered or amended and a

1   remittitur granted because the jury's award against Lyon County disregarded the Court's

2   instructions and the emotional distress damage awards are duplicative.[6]

3           *1.  No Evidentiary or Legal Errors Require a New Trial.*

4         Lyon County first argues that the plaintiffs' counsel improperly offered arguments and

5   elicited testimony about Lyon County's failure to train and supervise Glover.  Lyon County

6   contends that the Court erred as a matter of law when it (1) overruled several of the County's

7   objections on this point, (2) rejected a proposed jury instruction on failure to train or supervise,

8   and (3) instructed the County that it could argue that there was no claim for a failure to train or

9   supervise during closing.

10         As stated above, to obtain a new trial based on erroneous evidentiary rulings, the moving

11   party must show that the rulings were both erroneous and substantially prejudicial. *See*

12   *Ruvalcaba,* 64 F.3d at 1328.  A new trial should not be granted unless, after giving full respect to

13   the jury's findings, I am "left with the definite and firm conviction that a mistake has been

14   committed." *Landes Const. Co.*, 833 F.2d at 1371-72.

15         Beginning with Lyon's County's relevance and admissibility arguments, the evidence the

16   County cites in its motion was not admitted for the purpose of showing a failure to train or

17   supervise but for the purpose of establishing whether the County had a policy or custom of failing

18   to provide pre-deprivation notice or failing to obtain warrants.  Going into trial, the plaintiffs had

19   two theories of liability for its Fourth and Fourteenth Amendment claims against Lyon County.

20   The first was that Glover was a final policymaker for the County and therefore his actions could

21   be considered the County's *de facto* policy.  Their second theory of liability was that Lyon

22   County had a policy or custom of failing to provide pre-deprivation notice and failing to obtain

23   warrants.  I ruled on summary judgment that questions of fact remained on both theories. ECF

24

25

26

27   [6] Lyon County also argues that the emotional distress damage awards are excessive and not
supported by the evidence.  This is addressed below.

28

No. 205 at 15.  Thus, at trial the plaintiffs were allowed to present evidence to support both theories for why they believed Lyon County to be liable.

At the close of the plaintiffs' case, and upon their motion for judgment, I ruled that the evidence presented at trial showed that Glover was a final policymaker for the County and that a reasonable jury could not find otherwise. ECF No. 363 at 204-05.  I then stated that "the question is whether you [the plaintiffs] want to go to the jury on the other alternative theory as well.  That will go to the jury unless you decide you don't want to present that to the jury.  You've already got [my ruling that Glover was a final policymaker] . . . so you need to make [a] decision one way or the other whether you want both [theories] to go [to the jury]." *Id.* at 205; *see also id.* at 206. The plaintiffs ultimately chose not to submit their second theory to the jury. *Id.* at 210.  However, nothing in my ruling that Glover was a final policymaker foreclosed the plaintiffs' ability to present both theories to the jury.  Nor did my ruling make evidence of the County's policies or customs any less relevant when it was offered during opening statements and the plaintiffs' case in chief. *See* Fed. R. Evid. 401.

Upon review, all testimony and argument the County cites in its motion was admitted for the purpose of proving a policy or custom.  As the County acknowledges, this issue was raised and addressed multiple times during motions in limine and at trial. *See e.g.*, ECF Nos. 321; 326 at 55-57; 355 at 13-14.  My rulings on this issue before and during trial were not erroneous or substantially prejudicial.

Additionally, the decision not to give the jury an instruction on failure to train or supervise was not erroneous.  In rejecting this proposed jury instruction, I explained that there was no claim for failure to train or supervise and thus no such instruction was warranted. ECF No. 363 at 10. Lyon County is correct that "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge" and that the judge, not counsel, instructs the jury on the law. *See United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988).  However, in this case, there were no doubtful questions of law left unresolved because both parties agreed that there was no claim against Lyon County for failure to train or supervise.  I instructed the jury on the law applicable to

this case and the claims at issue.  I did not instruct the jury on law that was inapplicable to the claims actually put before them, nor was I required to do so.

After I declined to include a jury instruction related to failure to train or supervise, I informed defense counsel they were free to argue to the jury at closing that no such claim existed. ECF No. 363 at 10.  Lyon County chose not to do so. *See* ECF No. 356 at 106-113.  Lyon County contends that my instruction to counsel was also erroneous because it impermissibly ceded "to defense counsel the Court's exclusive responsibility to instruct the jury on issues of law" and therefore the County was "simply not in a position, without a corresponding jury instruction, to rehabilitate [the] jury." ECF No. 377 at 11.  I disagree.  Nothing prevented the County from arguing to the jury that there was no claim for a failure to train or supervise against the County, and it could have used the jury instructions and verdict form (which contained no such claim) to support its argument.  I thus deny Lyon County's motion for a new trial based on the alleged admission of irrelevant and prejudicial evidence and various alleged legal errors because neither the admission of this evidence nor my prior rulings was erroneous.

### 2. The Jury did not Disregard the Court's Instructions.

Lyon County next argues that the jury's damage awards demonstrate a disregard of the jury instructions and therefore must be altered or amended to prevent manifest injustice.  Lyon County relies on a quote from one juror in an article published in the Las Vegas Review-Journal newspaper after the trial concluded.  No other evidence is offered.

Federal Rule of Evidence 606(b) states that "[d]uring an inquiry into the validity of a verdict . . . a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The Court may not receive a juror's affidavit or evidence of a juror's statement on these matters."  The Committee Notes on Rule 606(b) state that a central focus of this Rule is "insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation, including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature

of the process." Fed. R. Evid. 606, advisory committee's note to subdivision (b) of 1972 proposed rule.  Jurors "may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts."[7] *United States v. Bagnariol*, 665 F.2d 877, 884-85 (9th Cir. 1981) (citing Fed. R. Evid. 606(b)).  Because statements by jurors on the deliberative process are not to be considered in assessing the validity of a verdict, I deny Lyon County's motion on this ground.

### 3. The Emotional Distress Damage Awards are Duplicative.

Similar to Glover, Lyon County argues that the jury's property damage awards are duplicative because they awarded $108,570 in property damages on all claims but listed the total property damages award as $217,140.  As analyzed above, the property damage awards are not duplicative or inconsistent.  A reasonable reading of the verdict form is that the jury awarded $217,140 in total property damages, consistent with the Joe Mathis' schedule of missing property (ECF No. 370 at 43), and found each defendant responsible for half of that total.  Therefore, I deny Lyon County's motion on this basis.

However, Lyon County also argues that the emotional distress damage awards against the County and Glover on the Fourteenth Amendment claims are also duplicative and allow the plaintiffs to doubly recover.  I agree.

Section 1983 "creates 'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)) (collecting cases).  "Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Id.* at 306; *Carey*, 435 U.S. at 255.  The task is one of adapting common law rules of damages to provide fair compensation for injuries caused by the deprivation

---

[7] There are exceptions to this general rule of exclusion, but none appears to apply in this instance, nor has the County argued that any exception applies.

1   of a constitutional right. *Carey*, 435 U.S. at 258.  Here, the constitutional right in question is the

2   plaintiffs' Fourteenth Amendment due process right to notice and an opportunity to be heard prior

3   to Glover removing items from their father's house.

4          The general rule against double recovery allows a plaintiff to be made whole and

5   compensated only once for his injuries. *See, e.g.*, *Bender v. City of N.Y.*, 78 F.3d 787, 793-94 (2d

6   Cir. 1996); *Lewis v. Kendrick*, 944 F.2d 949, 954 (1st Cir. 1991); *Gilmere v. City of Atlanta*, 864

7   F.2d 734, 740-41 (11th Cir.), *cert. denied*, 493 U.S. 817 (1989).  "A basic principle of

8   compensatory damages is that an injury can be compensated only once.  If two causes of action

9   provide a legal theory for compensating one injury, only one recovery may be obtained. . . . Only

10  if the second cause of action entitles the plaintiff to recover for an injury separate from the injury

11  compensated by the award for the first cause of action, or at least for an additional component of

12  injury not covered by the first cause of action, may additional damages be awarded." *Bender*, 78

13  F.3d at 793-94.[8]

14         Here, the jury awarded emotional distress damages against both Glover and Lyon County

15  on the plaintiffs' Fourteenth Amendment claim.  The same legal theory supported the claim

16  against Glover and the County (*i.e.*, that Glover was acting as a final policymaker for Lyon

17  County).  Additionally, the relevant conduct in question, and the injury to be compensated,

18  completely overlapped.  The conduct underlying the Fourteenth Amendment claim was Glover's

19  failure to provide the plaintiffs with notice and an opportunity to be heard prior to him removing

20  items from the Mathis home after Joseph's death.  The damages to be awarded for this violation

21  were those that would properly compensate the plaintiffs for Glover's failure.  Based solely on

22  Glover's actions, and due to his status as a final policymaker, Lyon County was also found to be

23  liable for Glover's violation of the plaintiffs' Fourteenth Amendment rights.  The verdict form is

24

25  _____

    [8] Though not controlling authority, the Supreme Court of Nevada has expressly adopted the
26  "double recovery doctrine," holding "that a plaintiff can recover only once for a single injury
    even if the plaintiff asserts multiple legal theories. . . . Satisfaction of the plaintiff's damages for
27  an injury bars further recovery for that injury." *Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d
    547, 549 (Nev. 2010).

28                              Page 16 of 35

clear that Lyon County was liable for Glover's conduct based on his status as a final policymaker for the County. ECF No. 342 at 7.  Thus, there is no reason why the emotional distress caused by Glover's conduct would result in additional damages against the County.  Rather, Lyon County is equally responsible for the harm caused by Glover's due process violation.

The jury found that Glover's failure to provide the plaintiffs with notice and an opportunity to be heard prior to removing items from their father's home caused each brother emotional distress damages in the amount of $60,000. *Id.* at 2.  This is the amount that the jury determined would fairly compensate the plaintiffs for Glover's due process violation.  Because Lyon County is liable only based on Glover's actions, and for no other, independent reason, the jury's additional award against the County of $270,000 for each Mathis Brother is impermissibly duplicative and would result in a double recovery.  In addition to being duplicative, and as discussed more fully below, the additional award against the County was not supported by the evidence because it is far larger than the award against Glover, even though there is no evidence to support such a disparity in the damage awards.

I therefore grant Lyon County's motion to amend the judgment on the ground that the emotional distress damages awarded against the County and Glover on the Fourteenth Amendment claim are duplicative. *Id.* at 7.  Because this award is also not supported by the evidence, the exact amount by which I am altering the award is discussed below.

### d.  The Defendants' Motions for a New Trial and to Amend the Judgment Because the Emotional Distress Damages Are Excessive and Unsupported by the Evidence

Glover and Lyon County argue that the jury's emotional distress damage awards on the Fourteenth and Fourth Amendment claims are excessive and not supported by the evidence presented at trial.[9]  They contend that the $1.8 million emotional distress damages are more than

---

[9] Glover and Lyon County filed joinders to each other's respective motions. ECF Nos. 375, 376, 378.

590 times the amount of the property damage awards and are not proportional to the actual injury suffered.  The defendants further contend that the evidence presented on emotional distress included only the plaintiffs' uncorroborated, self-serving statements related to sleeplessness, irritability, upset stomach, and stress.  They argue that this type of evidence is insufficient to support the $1.8 million damages award.

The defendants also argue that the emotional distress damage awards for the Fourteenth Amendment claims must be based on harm caused by the deficiency in procedure itself, not by the deprivation of any property.  They contend that the evidence presented at trial focused on the distress caused by the lost property, not on the distress caused by Glover's failure to give notice and an opportunity to be heard.  The defendants argue that the instruction given to the jury before deliberations made clear that emotional distress damages for the Fourteenth Amendment claim must have arisen from the deficiencies in procedure.  Thus, they contend, the jury erred in awarding emotional distress damages on the Fourteenth Amendment claims based partly on the distress caused by the loss of property.

The plaintiffs respond that the emotional distress damage awards are clearly supported by the plaintiffs' testimony and by the "egregious circumstances of this case." ECF No. 385 at 7.  They further contend that the plaintiffs' testimony regarding their emotional distress did not need to be corroborated and that such testimony, standing alone, is enough to substantiate an award.  The plaintiffs argue that they explicitly testified as to the distress Glover's constitutional violation caused them and therefore the defendants are incorrect that they testified only as to distress from the lost property.  They concede, however, that to some extent the procedural deficiencies and the loss of property are inseparable in this case because the procedural deficiencies are what allowed Glover to take property from their father's home.

The jury awarded the plaintiffs $1.8 million in emotional distress damages in the following amounts: (1) $60,000 against Glover for each brother on the Fourteenth Amendment claim ($180,000 subtotal); (2) $270,000 against Lyon County for each brother on the Fourteenth

Amendment claim ($810,000 subtotal); and (3) $270,000 against Lyon County for each brother on the Fourth Amendment claim ($810,000 subtotal).

### 1. Plaintiffs Can Recover Compensatory Damages for Unjustified Deprivations.

The constitutional deprivation underlying the Fourteenth Amendment claims was Glover's failure to provide the Mathis Brothers with notice and an opportunity to be heard prior to taking property from their father's residence.  This deprived the plaintiffs of procedural due process.

"A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations." *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988). Compensatory damages include the plaintiff's actual losses, mental anguish and humiliation, impairment of reputation, and out-of-pocket losses. *Id.*; *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760-61 (9th Cir. 1985).  A violation of procedural due process cannot be presumed to have caused actual harm; rather, the plaintiff must prove actual harm to recover substantial damages. *Carey*, 435 U.S. at 266; *Floyd v. Laws*, 929 F.2d 1390, 1401-02 (9th Cir. 1991).

The defendants' argument that the emotional distress damage awards must be based on harm caused by the deficiency in procedure itself, not by the deprivation of any property, might hold more sway if this was a case involving a justified deprivation.  That is because "the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983." *Carey*, 435 U.S. at 263.  "Where there is a deprivation that is substantively justified but departs from procedural due process, it is only the harm produced by the procedural defects that is compensable." *Chalmers*, 762 F.2d at 761 (citation omitted); *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 798 (9th Cir.1982) (holding a section 1983 plaintiff who was discharged from employment without due process but whose discharge was justified could not recover lost employment benefits).

But this is not a case involving a justified deprivation.  The defendants do not argue that Glover would have be justified in entering the house and taking property regardless of what the Mathis Brothers told him.  Thus, the deprivation was unjustified.  Unlike in the case of justified deprivations, when a deprivation is determined to have been unjustified, a plaintiff who is deprived of a property interest without procedural due process can recover compensatory damages. *Carey*, 453 U.S. at 264; *Knudson*, 832 F.2d at 1149.

The *Carey* case is instructive in articulating the difference between justified and unjustified deprivations with respect to emotional distress damages.  In *Carey*, the plaintiffs were public school students who received suspensions without a hearing for allegedly violating school policies. 435 U.S. at 248-52.  The failure to give the students a hearing before they were suspended was found to be a violation of their Fourteenth Amendment procedural due process rights.  The issue before the Supreme Court was the appropriate damages to award for the violation.  The Court noted that in cases where "a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." *Id.* at 263.  In such cases, a plaintiff must "convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself." *Id.; see also Watson v. City of San Jose*, 800 F.3d 1135, 1139 (9th Cir. 2015).

The Court approved the appellate court's holding that if the school defendants could prove that the students "would have been suspended even if a proper hearing had been held . . . then [the students] will not be entitled to recover damages to compensate them for injuries caused by the suspensions" but rather only the damages caused by the deficiencies in procedure. *Id.* at 260 (internal citation omitted).  The failure to provide procedural due process could not be treated as causing the suspensions if the students would have been suspended anyway, so "an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to [the students]." *Id*; *see also Scofield v. City of Hillsborough*, 862 F.2d 759, 765 (9th Cir. 1988) (holding that procedural due process rights of vehicle owner were violated if owner timely requested post-towing hearing and police officer denied request on the ground that a

hearing was not available; however, because the towing was proper the owner was not entitled to recover any damages he may have suffered as a result of the tow).

This is not a case where the deprivation was justified and only the procedures were deficient.  Because the deprivation was unjustified, the plaintiffs can recover for all harm suffered as a consequence of that deprivation. *Borunda*, 885 F.2d at 1389.  That includes emotional distress damages and property losses for both the unjustified deprivation of due process and the taking of property that resulted from the procedural violation.

Nevertheless, damages are not presumed when there has been a procedural due process violation, and the plaintiffs must still prove they were actually harmed in order to recover substantial damages. *Carey*, 453 U.S. at 266; *Floyd*, 929 F.2d at 1401-02.  Here, the plaintiffs did so.[10]  A reasonable reading of the verdict form is that the jury found that Glover's failure to call the Mathis Brothers allowed him to enter their father's home and take property without their knowledge or consent, and this directly caused the harm the Mathis Brothers sustained.  It was appropriate for the jury to consider evidence of the harm that arose from Glover's Fourteenth Amendment violation when determining compensatory damages.

### 2. Only Portions of the Emotional Distress Damage Awards are Supported by the Evidence.

The evidence and testimony presented at trial also support the Fourteenth Amendment damage awards against Glover and the Fourth Amendment damage awards against Lyon County. A plaintiff's testimony, standing alone, is enough to substantiate an award of emotional distress damages. *Passantino*, 212 F.3d at 513 ("While objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in . . . the Ninth Circuit, or the

---

[10] The jury instruction on Fourteenth Amendment damages stated: "A plaintiff may recover emotional distress damages arising from a violation of their due process rights under the Fourteenth Amendment to the United States Constitution.  However, for this claim, the emotional distress must arise directly from deficiencies in the procedure rather than from the deprivation of any property."  ECF No. 343 at 20.  This instruction was meant to address the causation concerns outlined in *Carey* and ensure the jury found a causal link between the due process deprivation and the emotional distress.

Supreme Court.") (collecting cases); *Zhang*, 339 F.3d at 1040 (citation omitted). Each plaintiff testified to the emotional toll that Glover's actions had on his life, both the effect of Glover entering their childhood home without notice and chance to stop him, and his taking of personal property including treasured family heirlooms that were never recovered. *See e.g.*, ECF Nos. 360 at 89; 363 at 82-86; 362 at 156-157.

The circumstances surrounding the injury are also important. "In some cases significant emotional distress may be readily apparent even without corroborative evidence. For instance, the violator may have engaged in egregious conduct. . . . Or, even if . . . not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm." *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004). Here, the plaintiffs presented evidence that after learning of their father's death they returned to their childhood home to find it ransacked and various family heirlooms and property taken. *See e.g.*, ECF No. 360 at 25, 40, 45-46. They then learned that Richard Glover, Lyon County's Public Administrator, had entered the home without notice and removed property. ECF No. 360 at 25. When confronted, Glover could not locate all the missing property, had forgotten where some of it was placed, and later destroyed other items. *See e.g.*, ECF Nos. 360 at 28-30, 47-49, 208-19; 362 at 84-85, 155. Testimony was presented that Glover searched and read their father's personal papers and put some of them in his own wallet. *See e.g.*, ECF No. 360 at 31, 35-38. Later, they found Glover selling some of their father's property at an auction. *See e.g.*, ECF No. 360 at 81-87. Based on the plaintiffs' testimony and the circumstances surrounding the violations, the jury's award of emotional distress damages against Glover on the Fourteenth Amendment claims and against the County on the Fourth Amendment claims are not excessive or contrary to the clear weight of the evidence. I therefore deny the defendants' motions on this ground.

However, the Fourteenth Amendment emotional distress damage awards against the County are contrary to the clear weight of evidence. There is no basis on which to award more damages against the County for the Fourteenth Amendment violation than against Glover. The County was found liable under the Fourteenth Amendment based on Glover being a final

policymaker and for no other, independent reason.  Thus, the disparity in the emotional distress damage awards between Glover ($60,000 per brother) and the County ($270,000 per brother) is unsupported by the evidence and must be corrected.  The emotional distress damage awards against the County on the Fourteenth Amendment claims must therefore be remitted down to $60,000 per brother, to match the amount awarded against Glover.

But this does not end the re-calculation.  Because there is no basis for awarding additional emotional distress damages on the Fourteenth Amendment claims beyond those caused by Glover's actions, the remaining $60,000 per brother awarded against the County must be struck as duplicative.  Rather than each defendant being individually responsible for $60,000 in damages, they are both equally responsible for the $60,000 in emotional distress damages each Mathis brother suffered from Mathis's actions.  Therefore, the additional $270,000 emotional distress damage awards against the County for each brother are struck in their entirety, so the total emotional distress damages award against the County is reduced by $810,000.

Both Glover and Lyon County were found liable on the plaintiffs' Fourteenth Amendment claims against each of them based on the actions of Glover. ECF No. 342 at ¶¶ 1-2, 17-18.  The verdict clearly shows that the jury believed both defendants were responsible for the violation and for the resulting damages. *Id.*  Therefore, a reasonable reading of the verdict is that the jury intended to hold the defendants jointly and severally liable for the damages caused by this violation. *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002) (holding that the district court did not err in holding the defendants jointly and severally liable for restitution payments where there was sufficient evidence that both defendants were found guilty and played essential roles in the wrongful conduct).  Glover and Lyon County will be held jointly and severally liable for the $60,000 in emotional distress damages awarded to each brother on his Fourteenth Amendment claim.

After viewing the evidence concerning damages in a light most favorable to the prevailing party, if I determine as I have here that the damage awards are excessive, I have two alternatives.

I[] may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified. . . . If the prevailing party does not consent to the reduced amount, a new trial must be granted. If the prevailing party accepts the remittitur, judgment must be entered in the lesser amount.

*Fenner*, 716 F.2d at 603 (citing *Linn*, 383 U.S. at 65-66; *Spearman v. Meyers*, 15 Ohio App.2d 9 (1968)). I therefore deny the defendants' motion, conditional upon the plaintiffs accepting a remittitur. Accordingly, the plaintiffs may accept reduced emotional distress damage awards of $330,000 per brother ($60,000 per brother for the Fourteenth Amendment claims plus $270,000 per brother for the Fourth Amendment claims) or opt for a new trial on the emotional distress damages on the Fourteenth Amendment claims.

### e.  The Plaintiffs' Motion for Attorney's Fees and Costs

The plaintiffs have moved for attorney's fees and costs based upon 42 U.S.C. § 1988. They argue that because the jury found in their favor on their § 1983 claims, they are the prevailing parties and are thus entitled to attorney's fees and costs. The plaintiffs request that I award them attorney's fees of $1,130,758.20 and costs of $24,188.86. They have submitted invoices and fee summaries in support of their proposed award.

The defendants[11] do not dispute that § 1988 allows prevailing parties in § 1983 actions to obtain reasonable attorney's fees and costs. However, they argue that I am not required to grant all fees and costs that the plaintiffs seek, but rather only those that are reasonable. The defendants contend there are numerous problems with the attorney's fees request that make it unreasonable: (1) the plaintiffs failed to submit the required affidavits; (2) billing deficiencies exist; (3) the successful defense of the Fourth Amendment claim against Glover was not taken into account; (4) fees and costs incurred at the appellate level cannot be recovered; and (5) an award of attorney's

---

[11] Glover filed on opposition to this motion (ECF No. 365) to which Lyon County joined (ECF No. 374). Thus, I attribute the arguments made in the opposition to both defendants.

fees for future work would be premature.  The defendants also oppose certain line items in the plaintiffs' costs calculation.  They contend that if I find that an award of attorney's fees and costs is appropriate, I should reduce the requested amount.

Section 1988 provides, in pertinent part, that "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs."  The congressional purpose behind § 1988 was to "eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law." *Ackerley Commc'ns v. City of Salem, Or.*, 752 F.2d 1394, 1397 (9th Cir. 1985).  My discretion is narrowly construed and the award of fees "should be the rule rather than the exception." *Id.* at 1396 (citing *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1251 (9th Cir. 1981)).

The determination of reasonable attorney's fees is based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See also Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  I must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  Next, I must decide whether to adjust the lodestar calculation based on an evaluation of relevant factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).  Only in "rare and exceptional cases" should a court adjust the lodestar figure. *See e.g.*, *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations omitted).

In determining the reasonableness of an hourly rate, courts consider the experience, skill, and reputation of the attorney requesting fees. *See e.g.*, *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community. *Id.*; *see also Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

Here, the plaintiffs have prevailed on their Fourteenth Amendment claims against Glover and their Fourth and Fourteenth Amendment claims against Lyon County. Thus, they will almost certainly be entitled to an award of reasonable attorneys' fees and costs. However, because I am altering the Fourteenth Amendment emotional distress damage awards and requiring the plaintiffs to decide whether to accept the remittitur or opt for a new trial on damages, it is premature to determine the exact award of fees and costs at this time.

Nevertheless, the defendants make three arguments that can be addressed now without delving into specific award amounts, and which will give guidance to the parties going forward: (1) Glover's successful defense of the Fourth Amendment claim, (2) the fees and costs incurred at the appellate level, and (3) the proposed award for future fees.

### 1. Glover's Defense of the Fourth Amendment Claims

The defendants argue that Glover's successful defense of the plaintiffs' Fourth Amendment claims was not taken into account in the fee request. They argue that the plaintiffs failed to apportion fees between their successful and unsuccessful claims, which makes their request excessive. The plaintiffs respond that the Fourth Amendment claims against Glover were inextricably related to their numerous other successful claims. They contend that all claims arose out of the same set of facts and were premised on Glover's removal of property from the Mathis home. Thus, the work on the Fourth Amendment claims against Glover was inseparable from the work performed on the successful Fourth Amendment claims against Lyon County.

I apply a two-step process for determining the appropriate reduction of a fee request involving "limited success." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (citing *Hensley*, 461 U.S. at 440).

> The first step is to consider whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded. Claims are unrelated if they are entirely distinct and separate from the claims on which the plaintiff prevailed. Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.
>
> . . .

> The second step . . . is to consider whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. In answering that question, a district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id.* at 435.

*Id.* (citations and quotations omitted); *see also Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). "[R]elated claims involve a common core of facts *or* are based on related legal theories. . . . [W]e have not required commonality of both facts and law before concluding that unsuccessful and successful claims are related." *Webb*, 330 F.3d at 1168 (emphasis in original).

Here, there is a clear commonality of facts among all of the plaintiffs' claims, including their failed Fourth Amendment claims against Glover. While Glover prevailed on the plaintiffs' Fourth Amendment claims because of qualified immunity, those claims were not "entirely distinct and separate from the claims on which the plaintiff[s] prevailed." *Sorenson*, 239 F.3d at 1147. Where, as here, "a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440; *see also Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1063 (9th Cir. 2006) (citations omitted) ("the legislative history behind § 1988 demonstrates Congress' intent to promote vigorous private enforcement of civil rights, . . . and permitting district courts to parse out [unsuccessful] claims from a set of interrelated claims may chill such enforcement").

Given the relatedness of all the plaintiffs' claims and their commonality of facts, and taking into account congressional intent to provide attorney's fees under § 1988, it would be inappropriate to reduce the plaintiffs' attorney's fee award on the failed Fourth Amendment claims against Glover. The plaintiffs are therefore permitted to request reasonable attorney's fees related to those claims.[12] To be clear, I am not determining at this time that the fees requested by the plaintiffs are reasonable. Rather, I am only making the determination that the plaintiffs are

---

[12] Reasonable attorney's fees on this issue are likely to be fairly limited, as Judge Dawson disposed of this claim early on in this litigation. ECF No. 61 (September 30, 2009 Order on Glover's Motion for Partial Judgment on the Pleadings).

1    entitled to request reasonable attorney's fees and costs related to their Fourth Amendment claims

2    against Glover.

3                            *2.  Fees and Costs Incurred at the Appellate Level*

4           The defendants argue that the plaintiffs' request for attorney's fees related to the two

5    Ninth Circuit appeals should be denied.  They argue that a request for attorney's fees related to an

6    appeal must be filed with the Ninth Circuit, not the district court.  In support, they cite to

7    *Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005), *amended*, No. 03-17095, 2005 WL 1154321

8    (9th Cir. May 17, 2005), which held that a request for attorney's fees incurred on appeal must be

9    made to the appellate court, not to the district court, and a district court is not authorized to award

10   attorney's fees for an appeal unless the appellate court transfers the fee request to the district

11   court for consideration.

12          The plaintiffs respond that the Ninth Circuit recently distinguished its holding in

13   *Cummings* as it relates to situations, like here, in which a party prevails on an interlocutory appeal

14   and subsequently becomes entitled to attorney's fees and costs under a fee shifting statute like

15   § 1988.  *Yamada v. Snipes*, 786 F.3d 1182, 1210 (9th Cir.), *cert. denied sub nom. Yamada v.*

16   *Shoda*, 136 S. Ct. 569 (2015).  The plaintiffs argue that in such cases a district court is authorized

17   to award attorney's fees incurred in defending against a defendant's interlocutory appeal.  *Id*.

18          I agree with the plaintiffs that *Yamada* controls.  In *Yamada*, the Court distinguished its

19   holding in *Cummings*:

20          *Cummings* . . . did not consider a situation in which a party prevails on
             interlocutory review and only subsequently becomes entitled to attorney's
21          fees under a fee-shifting statute such as § 1988. When a plaintiff is not
             entitled to attorney's fees after an interlocutory appeal, . . . it cannot
22          immediately request attorney's fees from this court.  Should the plaintiff
             subsequently become a prevailing party, however, it should presumptively
23          be eligible for attorney's fees incurred during the . . . appeal, because that
             appeal likely contributed to the success of the underlying litigation.
24

25   786 F.3d at 1210.  Here, both of Glover's interlocutory appeals related to his qualified immunity

26   defense.  The plaintiffs prevailed on those appeals.  At that time, however, the plaintiffs were not

27   yet "prevailing parties" under § 1988 and could not have requested attorney's fees immediately

28                                           Page 28 of 35

upon prevailing in the Ninth Circuit. Based on *Yamada*, the plaintiffs are permitted to request reasonable attorney's fees related to the interlocutory appeals. Again, I am not deciding at this time whether the plaintiffs' request is reasonable. I am only deciding that the plaintiffs are entitled to recover reasonable attorney's fees and costs incurred in connection with the appeals.

### 3. Future Attorney's Fees

I agree with the defendants' argument that it is premature for the plaintiffs to request future attorney's fees and costs. The plaintiffs' motion requests $32,000 in "additional attorneys' fees." ECF No. 365 at 12-13. They contend that approximately 100 hours of additional work will be needed on post-judgment motions. The plaintiffs cite no case law or statute in support of their request, nor do they submit evidence supporting the 100-hour estimate or the reasonableness of their rates. The request is therefore denied.

I therefore deny the plaintiffs' motion for attorney's fees and costs without prejudice. If they decide to accept the remittitur on the emotional distress damages, they may file a new motion for fees and costs consistent with my rulings in this Order. If they opt for a new trial on the emotional distress damages, attorney's fees and costs will be addressed after the trial.

### f. The Plaintiffs' Motion to Alter or Amend Judgment to Include Pre- and Post-judgment Interest

The plaintiffs have also moved to amend the judgment to include prejudgment interest on the damage awards in the amount of $1,893,555, prejudgment interest on the attorney's fees award in the amount of $247,590, and for post-judgment interest. They contend that because of the delay between the constitutional violations and when judgment is finally entered, they are entitled to additional compensation to ensure they are justly compensated for the defendants' harm to them. They were deprived of their property in May 2006, but did not receive a verdict until November 10, 2015. Thus, they seek prejudgment interest for almost ten years. The plaintiffs also argue that they funded over $600,000 of this litigation out of their retirement savings and personal funds, and thus should also receive prejudgment interest on that amount.

In opposition, the defendants[13] argue that: (1) prejudgment interest is inappropriate for the emotional distress damage awards; (2) the plaintiffs' method of calculating prejudgment interest on attorney's fees is flawed and does not consider that attorney's fees were paid over time; (3) prejudgment interest should be awarded only from the time of the verdict to the time judgment is entered; (4) the proposed interest rate is too high; and (5) the plaintiffs cannot create joint and several liability where the jury found none.

For the same reasons stated above related to the plaintiffs' request for fees and costs, the determination of exact amounts for pre- and post-judgment interest is premature at this time. Based on the suggested remittitur, the plaintiffs may opt for a new trial on damages. That would delay final judgment and affect any pre- or post-judgment interest calculations.

Nevertheless, certain issues can be addressed now without delving into specific amounts, which will guide the parties going forward.

### 1. Prejudgment Interest on Property Damages

The plaintiffs argue that a civil rights claim accrues when the plaintiff knew or should have learned of the injury. They contend that they knew the defendants had removed property from their father's home on June 1, 2006, and therefore they should receive prejudgment interest from that date.

The defendants respond that prejudgment interest should be awarded, if at all, from the date of the jury verdict to the date of judgment because the jury's award fully compensated the plaintiffs. The defendants point out that the jury was told to award an amount of damages that would "reasonably and fairly compensate the Plaintiffs for any injury you find was caused by the Defendants." ECF No. 343 at 30. Thus, it should be presumed the verdict amount was the amount the jury believed would compensate the plaintiffs as of the date of the verdict.

---

[13] Glover filed on opposition to this motion (ECF No. 379) to which Lyon County joined (ECF No. 380). Thus, I attribute the arguments made in the opposition to both defendants.

Prejudgment interest is a measure that "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987).  Neither 42 U.S.C. § 1983 nor 42 U.S.C. § 1988 mentions the award of prejudgment interest, and there is no general federal statute governing the award of prejudgment interest.  Nevertheless, courts may allow prejudgment interest even though the governing statute is silent. *Rodgers v. United States*, 332 U.S. 371, 373 (1947) (holding that when a federal statute is silent as to prejudgment interest, the court should fashion a federal rule which grants or denies prejudgment interest based on the congressional purpose of the particular statute).  A statute's failure to mention prejudgment interest does not necessarily manifest a congressional intent to bar interest. *Id.*

The purpose of a § 1983 damage award is to compensate the plaintiff for injuries caused by the deprivation of constitutional rights. *See Carey*, 435 U.S. at 254.  The Ninth Circuit has not directly addressed whether prejudgment interest is available under § 1983.  However, the Ninth Circuit has allowed prejudgment interest in many other federal question cases. *See Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1550-52 (9th Cir. 1989) (copyright case); *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986) (back-pay award); *W. Pac. Fisheries*, 730 F.2d at 1288 (admiralty case); *Criswell v. W. Airlines, Inc.*, 709 F.2d 544, 556-57 (9th Cir.1983), *aff'd*, 472 U.S. 400 (1985) (age discrimination case); *U.S. v. Cal. State Board of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd*, 456 U.S. 901 (1982) (tax case).[14]

Other courts have allowed prejudgment interest in § 1983 cases. *See Savarese v. Agriss*, 883 F.2d 1194, 1207 (3d Cir. 1989); *Hall v. Ochs*, 817 F.2d 920, 926 (1st Cir. 1987); *Murphy v. City of Elko*, 976 F. Supp. 1359, 1363 (D. Nev. 1997); *Gorelangton v. City of Reno*, 638 F. Supp. 1426, 1433 (D. Nev. 1986).  I would allow prejudgment interest on an appropriate § 1983 award.

---

[14]  The Ninth Circuit has affirmed the award of prejudgment interest in a race discrimination case under 42 U.S.C. § 1981. *Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir. 1984).  *Satterwhite* is persuasive because § 1981, like § 1983, is part of the Civil Rights Act.

The "award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court.  Awards of prejudgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *In re Acequia, Inc.*, 34 F.3d 800, 818 (9th Cir. 1994) (citing *Purcell v. United States*, 1 F.3d 932, 942-43 (9th Cir. 1993)) (quotation omitted).  "Prejudgment interest should not be thought of as a windfall in any event; it is simply an ingredient of full compensation that corrects judgments for the time value of money." *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) (citation and quotation omitted).  A court's discretionary award of prejudgment interest "should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 833-34 (2d Cir. 1992) (collecting Supreme Court cases).

Here, the plaintiff received property damage awards totaling $217,140.  Both parties agree that this amount was very likely based on the "Schedule of Joe Mathis' Missing Property." ECF No. 370 at 43 (trial exhibit 526).  Because the plaintiffs' losses were similar to a government taking, I am guided by the case law on prejudgment interest due in § 1983 actions predicated on an unconstitutional taking.  In *Schneider v. Cty. of San Diego*, a vehicle owner prevailed on his takings claim against the county but was not compensated by the county until long after the county took his vehicles. 285 F.3d 784 (9th Cir. 2002).  The Ninth Circuit found that the owner was entitled to prejudgment interest to ensure that he was put in as good a pecuniary position as he would have been had the county paid him for his vehicles when it took them.

In the present case, the defendants deprived the plaintiffs of their property on May 30, 2006, but the plaintiff did not obtain a jury award until November 10, 2015.  An award of prejudgment interest on the property damages is necessary to make the plaintiffs whole.  That interest should run from May 30, 2006 until final judgment is entered.  I am not, at this time, determining the appropriate interest rate nor am I ruling that the plaintiffs' request is appropriate.

Rather, I am ruling only that prejudgment interest on the property damage awards is appropriate in this case.

## 2. Prejudgment Interest on Emotional Distress Damages

The plaintiffs also move for prejudgment interest on their emotional distress damage awards. They contend that the emotional distress damages are just as much an actual loss as the property loss. The Plaintiffs argue that they have suffered emotional distress from the date they discovered the missing property on June 1, 2006, and are entitled to interest since then to properly compensate them for the defendants' wrongdoing.

The defendants respond that prejudgment interest awards are generally meant to compensate a party for the time value of money on their economic losses or for the unjust deprivation of property. They argue that because emotional distress damages are not meant to compensate the prevailing party for some economic loss or unjust deprivation, the rationale for prejudgment interest is not applicable. Additionally, they argue that emotional distress cannot be monetized and has no ascertainable value such that it would be an appropriate basis for prejudgment interest. They also contend that the cases the plaintiffs cite are distinguishable and none awards prejudgment interest on emotional distress damages from the time of the injury to the time of the judgment, as the plaintiffs are requesting. Further, the defendants argue that prejudgment interest on emotional distress damages would constitute a windfall because the jury's awards took into account the emotional distress the plaintiffs suffered up to the day of the verdict.

As stated above, prejudgment interest is available on damages in § 1983 cases and can be awarded where justified. However, under the circumstances of this case, prejudgment interest is not available on the plaintiffs' emotional distress damage awards.

"Awards of prejudgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *In re Acequia, Inc.*, 34 F.3d at 818 (9th Cir. 1994) (citation and quotation omitted). "Prejudgment interest . . . [is] an ingredient of full compensation that corrects judgments for the time value of money." *Donell*, 533 F.3d at

772.  Unlike the property damage awards, there is no basis to compensate the plaintiffs on the time value of their emotional distress.  Furthermore, each of the Mathis Brothers testified at trial about the emotional toll the defendants' actions had on his life. ECF Nos. 360 at 89; 363 at 82-86; 362 at 156-157.  The impact (and thus the loss) was not felt just on the day Glover entered their father's home, but rather continued thereafter.  The loss on that first day was not quantified such that prejudgment interest would be necessary to adequately compensate them.  During closing argument the plaintiffs requested $250,000 in emotional distress damages for each brother. ECF No. 356 at 73.  Even if they decide to accept the remittitur, each brother will receive $80,000 more than he requested.  The policies supporting prejudgment interest do not support prejudgment interest on the plaintiffs' emotional distress damages in this case.

I therefore deny the plaintiffs' motion requesting pre- and post-judgment interest without prejudice.  If the plaintiffs accept the remittitur on the emotional distress damages, they may file a new motion seeking interest, consist with my rulings in this Order.  If they opt for a new trial, the issue of pre- and post-judgment interest will be addressed after the trial.

**IV.    CONCLUSION**

IT IS THEREFORE ORDERED that defendant Richard Glover's motion for new trial **(ECF No. 369) is DENIED**.

IT IS FURTHER ORDERED that defendant Richard Glover's motion to alter or amend judgment and for remittitur **(ECF No. 370) is GRANTED in part**.  The motion is granted on the basis that a portion of the Fourteenth Amendment emotional distress damage awards are unsupported by the evidence.  It is denied on all other grounds.

IT IS FURTHER ORDERED that defendant Lyon County's motion for new trial or, alternatively, motion to alter or amend judgment and for remittitur **(ECF No. 377) is GRANTED in part**.  The motion is granted on the basis that a portion of the Fourteenth Amendment emotional distress damage awards are duplicative and unsupported by the evidence.  It is denied on all other grounds.

1    IT IS FURTHER ORDERED that the plaintiffs have until October 10, 2016 to elect

2    whether to (1) accept a remittitur of the emotional distress damage awards from $600,000 to

3    $330,000 per brother ($60,000 per brother for the Fourteenth Amendment claims against both

4    Glover and Lyon County, jointly and severally, and $270,000 per brother for the Fourth

5    Amendment claims against Lyon County), or (2) opt for a new trial on the Fourteenth

6    Amendment emotional distress damages.

7    IT IS FURTHER ORDERED that the plaintiffs' motion for attorney's fees and costs

8    **(ECF No. 365) is DENIED without prejudice**.  If the plaintiffs accept the remittitur, they may

9    file a new motion within 14 days of that decision.

10    IT IS FURTHER ORDERED that the plaintiffs' motion to alter or amend the judgment to

11    include pre- and post-judgment interest **(ECF No. 367) is DENIED without prejudice**.  If the

12    plaintiffs accept the remittitur, they may file a new motion within 14 days of that decision.

13    DATED this 9th day September, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE